The People v. Tiphaine.

---

Erie Oyer and Terminer. September 10, 1856. Before *Marvin*, Justice of the Supreme Court, and the Justices of the Sessions.

The People v. Leon Tiphaine.

The act entitled "An act for the prevention of intemperance, pauperism and crime" being unconstitutional, the provisions of the Revised Statutes on the subject were left in full force, notwithstanding the clause in the act repealing all previous statutes inconsistent with its provisions.

The defendant was indicted for a violation of the excise laws. The indictment contained numerous counts, which were generally framed under the Revised Statutes relating to excise and the regulation of taverns and groceries. All the counts charged the sale of spiritous liquors without

license, and some of the counts alleged the sale in quantities less than five gallons. The defendant demurred.

*A. Sawin* (District Attorney), for the people.

*F. J. Fithian*, for the defendant.

*By the Court*, MARVIN, J.—"Whoever shall sell any strong or spiritous liquors, or any wines, in any quantity less than five gallons at a time, without having a license therefor, granted as herein directed, shall forfeit twenty-five dollars." (1 *R. S.*, 680, § 15.) "All offences against the provisions of this title shall be deemed misdemeanors, punishable by fine and imprisonment." (*Id.*, 682, § 25.) Are these provisions of the Revised Statutes in force? There is published, in the volumes of Session Laws of this state for 1855, what purports to be "An act for the prevention of intemperance, pauperism and crime." (*Id.*, ch. 231.) In the twenty-fourth section it is declared, "all acts and parts of acts, and all charters and parts of charters, inconsistent with this act, are hereby repealed." The provisions of the Revised Statutes, above quoted, are inconsistent with the so-called act of 1855. The latter act assumed to provide an entirely new system, as a substitute for the system of the Revised Statutes, touching the sale of liquors. By the first section the sale of intoxicating liquor is prohibited generally, except as thereinafter provided. This prohibition includes all intoxicating liquors, without regard to quantity. The Revised Statutes had no relation to strong or spiritous liquors in quantities exceeding five gallons. The second and third sections of the act of 1855 assume to regulate the sale of intoxicating liquors. The fourth section makes a violation of the provisions of the preceding sections a misdemeanor, and inflicts penalties, &c. The recent decisions of the Court of Appeals, in effect, pronounce these four sections of the act of 1855 unconstitutional. Judge Selden says: "The conclusion to which I

The People *v.* Tiphaine.

am thus brought is necessarily subversive of the first four sections of the law, in their present form." I shall not remark further upon the decisions of this court, or the opinions delivered, but shall proceed upon the ground that the first four sections are in conflict with the constitution, and that they are therefore void. What will be the consequence of this position? These sections contained the substitute for the prohibitions and licensing system of the Revised Statutes, and they were inconsistent with the provisions of the Revised Statutes. If the provisions of these four sections were valid and obligatory as law, they necessarily abrogated the provisions of the Revised Statutes. It may be said, perhaps, that they were not inconsistent with the general prohibition contained in section fifteen. That section impliedly permitted the sale of spiritous liquors in quantities exceeding five gallons. The prohibition in the act of 1855 extended to all intoxicating liquors without regard to quantity. By the fifteenth section of the Revised Statutes the sale was unlawful only when made "without having a license therefor, granted as therein directed;" and the act of 1855 assumed to abrogate the license system as provided in the Revised Statutes. In short, had the first four sections of the statute of 1855 been valid, no action or indictment could have been based upon the fifteenth section of the Revised Statutes. As these four sections, containing the system substituted for and inconsistent with the Revised Statutes, are, however, null and void, having no force as law, how can it be said, in a judicial and legal sense, that they are inconsistent with the provisions of the Revised Statutes? All acts inconsistent with this act are hereby repealed. What is the meaning of "*this act?*" What construction shall be given to those words? Shall we say that they include all the language and provisions of what professes to be "An act for the prevention of intemperance, pauperism and crime?" If we adopt this mode of construction, the

provisions of the Revised Statutes are abrogated. In my opinion this is not the proper construction.

If the legislature has made a prohibition in the form of a statute, which it was not authorized by the constitution to enact as a statute, it is not a statute; it is not a law. The legislative power is vested in a senate and assembly, but this power is not unlimited. It is restricted by the fundamental law which the people themselves have enacted, to wit, the constitution. The legislature, in exercising the power conferred, enact laws, and the law is called a statute, or, "*an act*." When the legislature transcends its power, their acts or doings are void; and whatever language they may have used, and in whatever form they may have put it, they have not succeeded in bringing into existence "an act." Law is a rule of action; municipal law is a rule of civil conduct prescribed by the supreme power in the state. (1 *Bl. Com.*, 44.) The laws consist of the unwritten laws (common law) and of the written or statute law.

Blackstone says the written laws of a kingdom are statutes, acts or edicts. (1 *id.*, 85.) "Act," in legislation, is a statute or law made by a legislative body; as an act of congress is a law by the congress of the United States, an act of assembly is a law made by a legislative assembly. (*Bouv. Law Dic.*, "*Act.*") Acts are general or special, public or private. All legislative acts are laws, and if not laws, then they are not acts of legislation. In my opinion it is important so to regard the words "this act," when used in that clause of a statute repealing all statutes or acts inconsistent with it. If this construction is not given, very strange and anomalous results may follow, and it may often be difficult to determine what the state of the law is. Suppose the legislature attempts legislation touching a subject already embraced by the law, and declares that all statutes or acts inconsistent with it are repealed, and it is held that the entire act is unconstitutional and void: would it be claimed that the prior acts had been affected by the repealing clause? If so, the

The People *v.* Tiphaine.

legislature, without designing it, might leave the whole sub-
ject of the prior act or acts without any law whatever.
Indeed, such would be the effect in reference to the subject
we are considering. Now, there is not a man in the whole
state who supposes that the legislature had any intention of
repealing the Revised Statutes relating to excise and the
regulation of taverns and groceries, and substitute nothing
in their stead.

If a statute repeals a prior statute, and then a subsequent
statute repeals the repealing statute, the statute first repealed
is at once revived. This is the common law rule; and why?
The repealing act being annulled, struck out of existence, it
is as though it had never been. Now, in the present case,
strike out the unconstitutional provisions in the act of 1855
and there will be nothing in the Revised Statutes touching
excise, &c., inconsistent with all that shall remain in the
act. There will be some remainder, though small. It con-
tains some new provisions which do not conflict with anything
in the Revised Statutes, and which are not in conflict with
the constitution. In my opinion, it would be extremely
dangerous to adopt any other mode of construction when
applied to our system of legislation, where the constitution
is a law to the legislature; and when they exceed their power
all their acts and doings are void. Before we can say that
any of the valid, binding laws of the state are inconsistent
with another law, we must know and hold that such other
law has been enacted, and that it is valid and binding. This
must be so, not only in relation to statutes, but also in rela-
tion to any attempt to change the common law.

Without pursuing this question further, in my opinion the
proper judicial and legal construction of the words " this act,"
as used in section twenty-four of the statute, will include
only such provisions of the act as are constitutional. And
as there will remain nothing in the act inconsistent with the
provisions of the Revised Statutes upon which most of the
counts in the indictment are founded, it follows that the

demurrer is not well taken. Some of the counts are good and the demurrer is general. We might stop here. The indictment, however, contains some counts in which the averment " in a quantity less than five gallons " is omitted. The counts all contain the averment of sale without any lawful authority, admission or allowance, and without being licensed thereto or therefor according to law. Enough has been said to show that sales of intoxicating liquor, in quantities exceeding five gallons, is not unlawful. Those counts in which the allegations of sale, in a quantity less than five gallons, is omitted, are not good.

It has been argued that all sales in quantities less than five gallons are unlawful, and that, as the law now is, there is no authority to license the sale. This latter position is important, and I shall briefly consider it. As we have already seen, the prohibition, in the Revised Statutes, of sales in quantities less than five gallons, is not unqualified. The sale " without having a license therefor, granted as herein directed," is prohibited. The statute provided a licensing system. Is that system abrogated ? It is claimed that it is, in express terms, and that the effect of all the legislation and the decisions of the Court of Appeals is, that all sales in quantities less than five gallons are unlawful, and that there is no authority anywhere to license or permit sales in small quantities. If this is so, a result has certainly been produced never anticipated by the legislature or any man in the state. The legislature, in the act of 1855, undertook to confer the right to sell in any quantities upon certain persons who should comply with the provisions of the act, as specified in the several sections. This section has fallen by the decision of the Court of Appeals. By the twenty-fifth section of this act, it is declared that " no license to sell liquor, except as herein provided, shall be hereafter granted." This provision is undoubtedly clear and express, and would require no construction but for the facts aside from itself.

The People *v.* Tiphaine.

If the act had provided for granting licenses, then undoubt-edly all other licenses would be prohibited; but it turns out that the act contains no provisions for granting licenses. I mean, of course, no valid provisions; as the Court of Appeals have held that those sections of the act, declaring who may sell and under what circumstances, are void. The legisla-ture refer to those provisions inaccurately as authorizing licenses. Their meaning is sufficiently obvious in this res-pect, and I will not remark upon the inaccuracy. But as, in law, no provision is made in the act authorizing licenses, or sales at all in any quantity, what construction shall we give to this provision of the act?

Shall we leave out the exceptions and read it thus? "No license to sell liquor shall hereafter be granted." No one can fail to see that this would be directly contrary to the intention of the legislature. The great leading and funda-mental rule for the construction of statutes is to ascertain the intention of the legislature. It is often necessary to examine with care and to consider the entire act, and sometimes previous and cotemporaneous legislation, for the purpose of ascertaining the intentions of the legislature. In the present case, the intention of the legislature was obvious enough. They designed to substitute a new system for the old licensing system, and they supposed they had; but there was an entire failure to accomplish the object or intention. They did not intend to abrogate the old license system and leave nothing in its place. The actual intention of the legislature has failed and cannot be carried into effect, and, in my opinion, this provision in relation to licenses should be held to be nugatory.

In examining wills, if the intention of the testator cannot be ascertained, the will is void for uncertainty. So if the intention is ascertained, but it violates well settled rules of law, or if it be impossible to carry the intention into effect, the will is void.

In the present .case, we have a right to look into the unconstitutional provisions of the act to which the legislature refer in the exception in section twenty-five, for the purpose of ascertaining their intention, and having ascertained it, we find that it cannot be executed or carried into effect. I submit that the whole provisions affected by the exception must fall.

It is safer to adopt this course than to speculate as to what would have been the intention of the legislature, or what the legislature would have declared touching licenses, in the absence of the provisions which they inserted in the bill, in relation to sales.

The courts have no power to legislate. Their province is simply to declare the law as legally enacted; and if the legislature, for any cause, has failed to make itself understood, or being understood, its intention is in conflict with the constitution, the courts are to say so, and the attempted legislation is a failure. I repeat, the intention of the legislature is clear enough. They say that certain persons may sell liquor, and they refer to this as a license, and then, in effect, say that no other license shall be granted. The system of sales provided by the legislature was a nullity. We know that they did not intend to abolish all sales in quantities less than five gallons. If we now hold, as the effect of the legislation, that all sales in quantities less than five gallons are unconditionally prohibited, we shall hold in direct conflict with the known intention of the legislature, as evinced in the Revised Statutes and the act of 1855. This, in my opinion, would be judicial legislation.

I think we should hold that the intention of the legislature, touching the question we are considering, cannot be carried into effect, as the provisions of the statutes, evincing that intention, are in conflict with the fundamental law. In my opinion, no effect can be given to that part of section twenty-five declaring that " No license to sell liquor, *except as herein provided*, shall hereafter be granted." The result is that the

Revised Statutes relating to licenses are in full force. The board of excise may grant licenses, and all sales of strong or spiritous liquors, in any quantity less than five gallons at a time, without having a license therefor, granted as directed in the Revised Statutes, are unlawful. The demurrer must be overruled, and there must be judgment for the people upon those counts which are good, as herein declared.

Judgment for the people.

---

SUPREME COURT. Monroe General Term, December, 1856. *T. R. Strong, Welles* and *Smith,* Justices.